IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TONYA STROUP<br>307 Congressional Drive<br>Stevensville, Maryland 21666<br><br>    Plaintiff<br><br>v.<br><br>The Coordinating Center<br>8531 Veterans Highway, 3rd Floor<br>Millersville, MD 21108<br><br>    Defendant | CIVIL ACTION NO: 1:23-cv-94<br><br><br>JURY TRIAL DEMAND |

# COMPLAINT

Plaintiff, Tonya Stroup sues the Defendant pursuant Title VII of the of the Civil Rights Act of 1964, and for her cause of actions states:

## THE PARTIES

1. Plaintiff, Tonya Stroup (hereinafter "Stroup" or Plaintiff) is an adult resident of Queen Anne's County, Maryland, and a citizen of the United States.

2. Defendant The Coordinating Center (hereinafter "the Center" or Defendant) is an entity that does business in Maryland assisting various health care providers with comprehensive care management for patients and individuals with health, social, and disability needs.

1

## JURSIDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to Title VII, § 701(j); 42 USC §2000e.

## VENUE

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b). Defendant is a Maryland business located within this jurisdiction. Substantially all events or omissions giving rise to this claim occurred in this jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to brining this suit, Plaintiff caused to be filed with the Baltimore office of the EEOC a timely claim alleging religious discrimination and violations of Title VII. That claim was reviewed and a Notice of Right to Sue was issued on October 17, 2022.

## STATEMENT OF FACTS

6. In 2021, the Plaintiff was employed by the Defendant. Her duties included coordinating the Center's Support Planners who were supporting managed care clients/patients in the field. Plaintiff worked from home and would communicate by phone or other remote means and provide Defendant's Support Planners information and guidance on an as-needed basis and concerning the individual medical information and/or the home care needs of individuals with health or other care needs.

7. Plaintiff has since 2014 been working remotely/virtually from home in carrying out these duties. Since 2014 and throughout the relevant period, Plaintiff was rarely required to accompany a Support Planner in the field and her in-person appearances in the Defendant's office

was limited to meetings held once or twice a year prior to the Covid pandemic, and at no time afterwards in-person. [Id.]

8. In or around October 2021, the Defendant notified all employees that they would be required to be fully vaccinated with a Covid-19 vaccination. They stated that this was a 100% vaccination policy, and those not vaccinated would face employment termination. Meanwhile, each non-vaccinated employee would be required to create a Covid-19 Safety Plan. The Plaintiff complied with the Safety Plan requirement and the Defendant approved her plan.

9. However, Plaintiff decided not to get vaccinated because of her sincerely held religious beliefs regarding her Catholic faith and her knowledge of facts regarding the research and development of the Covid 19 vaccinations that were available during the relevant time period.

10. In December 2021, the Defendant Center provided Plaintiff and other employees who requested it a Request for Exemption/Accommodation for Covid 19 vaccination. On 12/2/2021 the Plaintiff completed the request, asking for an exemption based on her sincerely held religious beliefs.

11. The request form required her to "indicate…the general basis as to why [she was] requesting an Exemption/Accommodation…" There were two check block options provided for her to answer, i.e., religious or medical, and Ms. Stroup checked the former. The form did not ask for any elaboration on the actual reasoning for a religious exemption request, but only whether the applicant had documentation to support her sincerely held belief.

12. The plaintiff completed the form and timely and properly submitted it to Defendant's Human Resources (HR) personnel. The Plaintiff subsequently met with Defendant's HR representative. The latter informed Plaintiff that it did not matter that she had submitted a

request for exemption because none of the employee who had filed similar requests would be granted such an exemption. At the interview, the HR representative asked no questions pertaining to Plaintiff's reasons for the request, including any inquiry into her sincerity of her beliefs bearing on her refusing the vaccine.

13. Although Plaintiff had been for more than six years in a remote employment capacity, Defendant offered no reasonable accommodation, namely that Plaintiff continue to work remotely and continue to have little to no contact with other employees or clients as she had during the previous six years.

14. After her meeting with Defendant's HR representative, Plaintiff's employment was terminated as required by its 100% vaccination policy and because Plaintiff had refused vaccine and her exemption request was denied. The employment of all other employees who had similarly filed for religious exemptions and remained unvaccinated was also terminated, and no religious exemptions were granted by the Defendant.

15. Plaintiff has been unable to secure comparable employment since her termination in January, 2022.

## COUNT ONE

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

### 42 USC Sec. 2000e

16. "Title VII of the Civil Rights Act of 1964 add[s] as a distinct obligation of

employers the duty to reasonably accommodate the religious practices of employees to the extent that they can do so without undue hardship. Title VII, § 701(j); 42 USC §2000e. The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id.; 29 CFR 1605.2; 42 U.S.C. 2000e(j) (emphasis added).

17. "[T]he employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance. However, if an employee requests a religious accommodation, and an employer is aware of facts that provide an objective basis for questioning either the religious nature or the sincerity of a particular belief, practice, or observance, the employer would be justified in requesting additional supporting information." 29 CFR 1605.

18. "In most cases, whether a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. This standard was developed in *United States v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. United States*, 398 U.S. 333 (1970)." 29 CFR § 1605.1

19. "The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee." 29 CFR § 1605.1 (emphasis added).

20. "Section 701(j) makes it an unlawful employment practice under section 703(a)(1) for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business." 29 CFR § 1605.2(b)(1).

21. "After an employee or prospective employee notifies the employer or labor organization of his or her need for a religious accommodation, the employer or labor organization has an obligation to reasonably accommodate the individual's religious practices. A refusal to accommodate is justified only when an employer or labor organization can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation. A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship." 29 CFR § 1605.2(c)(1)

22. The Defendant violated Plaintiff's rights under Title VII by failing to abide by each and every of its statutory obligations in the course of determining Plaintiff's request for religious exemption. Plaintiff's decision was based on a sincerely held religious belief and was thus a protected activity. The Defendant did not inquire into her religious belief when it apparently had a doubt as to her sincerity. Defendant fired all of its employees who had asked for similar requests and after denying every such request, and it failed to reasonably accommodate the Plaintiff even though a reasonable, non-burdensome accommodation was clearly available and had been in effect as to Plaintiff for more than six years prior to her request for such an accommodation. It is also clear that the Defendant's intentions were disingenuous and not in good faith, and calculated only to give superficial treatment, if that, to any and all religious request since acting in good faith

would likely result in something short of its 100% vaccination policy. Defendant's adverse decision to terminate the Plaintiff was the direct and proximate result of its 100% vaccination policy and blanket denial of Plaintiff's and similar employees requests for religious accommodation.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Compensatory damages in the amount of $150,000; and

B. Punitive Damages as determined by a jury; and

C. Nominal Damages as determined by a jury; and

D. Attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988; and

E. Any other further relief as the Court deems just and appropriate.


S/ Marc D. Schifanelli
Bar No.: 27753
P.O. Box 1023
Stevensville, Maryland 21666
240-882-2402