IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TONYA STROUP, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.  MJM-23-0094 |
| | * | |
| THE COORDINATING CENTER, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

      Tonya Stroup ("Plaintiff") commenced this civil action against her former employer, The Coordinating Center ("Defendant" or "TCC"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] Plaintiff's Amended Complaint alleges that Defendant failed to provide a reasonable accommodation of Plaintiff's religious beliefs by denying her request for a religious exemption from a COVID-19 vaccination mandate and terminating her employment. ECF 6. Currently pending is Defendant's motion to dismiss or, in the alternative, motion for summary judgment. ECF 12. The Court has reviewed the Plaintiff's Amended Complaint, Defendant's memorandum in support of the motion, Plaintiff's memorandum in opposition, Defendant's memorandum in reply to Plaintiff's opposition, and documents attached to the memoranda. A hearing on the motion is not necessary. L. R. 105.6. For the reasons explained below, Defendant's motion to dismiss or, in the alternative, motion for summary judgment will be denied without prejudice to either party filing a dispositive motion at a later stage in the litigation.

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 10).

I.     **Background**

    A.  Facts Alleged In the Amended Complaint[2]

Defendant "is an entity that does business in Maryland assisting various health care providers with comprehensive care management for patients and individuals with health, social, and disability needs." Am. Compl. ¶ 2. Plaintiff's job duties as an employee of Defendant included "coordinating [TCC's] Support Planners who were supporting managed care clients/patients in the field." *Id.* at ¶ 6. Since 2014, until the termination of her employment, Plaintiff worked remotely from home and "would communicate by phone or other remote means" to provide Support Planners "information and guidance on an as-needed basis . . . concerning the individual medical information and/or the home care needs of individuals with health or other care needs." *Id.* at ¶¶ 6, 7. Plaintiff was "rarely required to accompany a Support Planner in the field[,] and her in-person appearances in the Defendant's office [were] limited to meetings held once or twice a year prior to the Covid pandemic, and at no time afterwards in-person." *Id.* at ¶ 7.

In October 2021, Defendant notified all employees they would "be required to be fully vaccinated with a Covid-19 vaccination." *Id.* at ¶ 8. Any employee not in compliance with the vaccination requirement would be terminated. *Id.* Each presently non-vaccinated employee was required to create a safety plan. *Id.* Plaintiff created a safety plan, and Defendant approved it. *Id.*

---

[2]     When resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts are generally limited to considering the allegations set forth in the complaint and documents that are either attached to the complaint, integral to the complaint, or "explicitly incorporated into the complaint by reference[.]" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also* Fed. R. Civ. P. 10(c).

However, Plaintiff did not plan to receive vaccination for COVID-19 due to her "sincerely held religious beliefs regarding her Catholic faith and her knowledge of facts regarding the research and development of the Covid 19 vaccinations that were available during the relevant time period." *Id.* Specifically, Plaintiff decided not to be vaccinated based upon her understanding that the COVID-19 vaccine was developed using "fetal tissues." *Id.* Plaintiff alleges that a news report was published in 2021 claiming that tissue cells used to test, develop, or produce the vaccine were from "a few elective abortions performed more than three decades ago." *Id.* Plaintiff also claims that a statement made by a Catholic organization in December 2020 referred to the cell lines as "morally compromised for their connection with abortions." *Id.* at ¶ 9.

In December 2021, Defendant provided a "Request for Exemption/Accommodation for COVID-19 Vaccination" form ("Accommodation Form") for any employees who wished to be exempted from Defendant's mandatory vaccination policy. *Id.*; Def. Exh. 3.[3] Plaintiff completed the Accommodation Form on December 2, 2021. Def. Exh. 3. The Accommodation Form required Plaintiff to indicate "the general basis" for requesting an exemption by checking a box for either "Religious Exemption" or "Health Condition/Medical Exemption," or both. *Id.* Plaintiff checked "Religious Exemption." *Id.* For those employees who cited religious reasons for seeking an exemption, the Accommodation Form states the following:

---

[3]   Defendant has attached as Exhibit 3 to its motion a copy of the Accommodation Form completed by Plaintiff. ECF 12-2 at 15–16. As previously noted, courts are generally restricted to considering a complaint, any attachments to the complaint, and materials incorporated by reference into the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Goines*, 822 F.3d at 165–66. Courts may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). Here, the Amended Complaint makes specific reference to the Accommodation Form, the Accommodation Form is integral to Plaintiff's allegations that Defendant violated Title VII, and Plaintiff does not dispute the authenticity of Defendant's Exhibit 3.

> In some cases [Defendant] will need to obtain additional information and/or documentation about your religious practice(s) or belief(s). We may need to discuss the nature of your religious belief(s), practice(s), and requested accommodation with your religion's spiritual leader (if applicable) or religious scholars to address your request for an exemption.
>
> If requested, can you provide documentation to support your belief(s) and need for an accommodation?

*Id.* The employee was to respond by checking a box for yes or no, and "[i]f no," the employee was to "explain why" in three lines of space provided on the form. *Id.* Plaintiff checked "[n]o" and provided the explanation, "My religious beliefs are deeply personal." *Id.* Plaintiff submitted the Accommodation Form to Defendant's Human Resources ("HR") personnel. Am. Compl. ¶ 10.

Plaintiff subsequently met with Defendant's HR representative, Ms. Duvall. *Id.* Ms. Duvall did not ask Plaintiff any questions or request any information about the reasons Plaintiff sought exemption from the vaccination policy or the sincerity of Plaintiff's beliefs against the vaccine. *Id.* According to Plaintiff, Ms. Duvall "knew [Plaintiff's] daughter attended a Catholic high school . . . and that [Plaintiff's] request was based on her Catholic beliefs." *Id.* Plaintiff claims Ms. Duvall informed Plaintiff that Defendant would not be granting any requests for exemption from the vaccination policy. *Id.*

Because Plaintiff's exemption request was denied and she refused the vaccine, Plaintiff's employment was terminated in January 2022 "as required" by Defendant's vaccination policy. *Id.* at ¶¶ 12–13. Since her termination, Plaintiff "has been unable to secure comparable employment" and "has suffered severe emotional distress from having to unnecessarily choose between her religious faith and termination of her employment by Defendant." *Id.* at ¶ 13.

B. <u>Additional Facts</u>[4]

As of October 2021, Plaintiff's position with Defendant was as a Nurse Consultant in the Community First Choice Program. Def. Aff. ¶ 4. Plaintiff's "Essential Responsibilities" as a Nurse Consultant in that program included "assess[ing] home care needs by reviewing medical documentation and/or accompanying the Support Planners to site visits or discharge planning meetings as required." Def. Exh. 1. Plaintiff's position required her to support approximately eighty or more Support Planners, eight or more Management Staff members, and more than 3,000 clients. Pl. Aff. For several years before her termination, Plaintiff worked "virtual[ly]" so she "could be available to as many Support Planners and Management Staff as required." *Id.* Plaintiff's colleague, Jill Hoch, attests that she worked for Defendant for over five years and, during that time, Plaintiff "always worked virtually[]" and "was never in the office." Hoch Aff. Although Ms. Hoch was "an office employee[,]" "the majority of positions [at TCC], including [Plaintiff's,] were 100% virtual." *Id.*

Defendant issued its mandatory COVID-19 vaccination policy in November 2021, requiring all employees to be fully vaccinated by January 14, 2022, "as a term and condition of employment." Def. Exh. 2. The policy provided that employees "who do not comply with the mandated vaccine[] will be involuntarily removed from their positions thus ending their employment[.]" *Id.* However, the policy also provided the following:

> Coworkers . . . may be entitled, in accordance with federal/state regulation, to a reasonable accommodation if . . . the COVID-19 vaccine conflicts with a sincerely held religious belief. . . . HR will respond to all requests for reasonable

---

[4] Defendant has presented additional information and documents in support of its alternative motion for summary judgment, including an affidavit provided by Defendant's Associate Vice President of HR on behalf of Defendant, a document containing the job description for Plaintiff's position (Exhibit 1), and Defendant's written COVID-19 vaccination policy (Exhibit 2). ECF 12-2 at 1–14. In response, Plaintiff attached to her opposition her own affidavit and an affidavit of a former colleague, Jill Hoch. ECF 13-1 & 13-2.

accommodations and schedule a meeting with the coworker within two business days.

*Id.*

Plaintiff submitted the Accommodation Form to Defendant's HR Department on December 2, 2021, Def. Aff. ¶ 6, and met with Ms. Duvall, Senior Vice President of HR, the next day to discuss the request for accommodation. Pl. Aff. Ms. Duvall did not ask Plaintiff "to provide any information about [her] religious affiliation or additional information to support [Plaintiff's] request[,]" but advised Plaintiff that Defendant would not approve any exemptions from the vaccination requirement. *Id.* Ms. Duvall also informed Plaintiff that another employee "wrote 3–4 pages of documentation to support their request for a religious exemption and that too was denied." *Id.*

C. Procedural History

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") "alleging religious discrimination and violations of Title VII, and the EEOC subsequently issued a Notice of Right to Sue. Am. Compl. ¶5.

Plaintiff then filed a Complaint with this Court on January 12, 2023, ECF 1, and an Amended Complaint on January 28, 2023, ECF 6. The Defendant submitted a Motion to Dismiss for Failure to State a Claim or, in the alternative, a Motion for Summary Judgment and Request for Hearing on February 22, 2023. ECF 12. Plaintiff filed a Response in Opposition to Defendant's Motion on March 1, 2023, ECF 13, and Defendant submitted a Reply to Plaintiff's Opposition on March 15, 2023, ECF 14.

**II.     Legal Standard**

A. Motion to Dismiss

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted).

A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider matters outside the pleadings attached to a Fed. R. Civ. P. 12(b)(6) motion pursuant to Fed. R. Civ. P. 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56" but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte* unless it provides notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (noting that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). However, when the movant expressly captions its motion "in the

alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed have notice that conversion under Rule 12(d) may occur, and the court need not "notify parties of the obvious." *Laughlin*, 149 F.3d at 261. A district court has "complete discretion" to decide whether "to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . . thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2284 (3d ed. 2004, 2011 Supp.). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–66.

B. <u>Motion for Summary Judgment</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant a party's summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). To avoid summary judgment, the non-moving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *see also Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 809 F.3d 463, 470 (4th Cir. 2018). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a

9

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587, but the court is not to weigh the evidence, make credibility determinations, or decide the truth of the disputed facts. *Anderson*, 477 U.S. at 249; *see also Wilson v. Prince George's Cty.*, 803 F.3d 213, 218-19 (4th Cir. 2018); *Guessous v. Fairview Prop. Inv. LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Summary judgment is generally inappropriate "where the parties have no had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). However, the non-moving party cannot "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a [Fed. R. Civ. P. 56(d)] affidavit." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). A Rule 56(d) affidavit specifies reasons the non-moving party "cannot present facts essential to justify its opposition[]" to a summary judgment motion. Fed. R. Civ. P. 56(d). "[F]ailure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244.

### III.     Analysis

Title VII of the Civil Rights Act of 1964 prohibits an employer from, *inter alia*, discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). An employee aggrieved by an employer's violation of the statute may recover damages in a civil action brought under Title VII.

An employee may demonstrate religious discrimination under either of two theories: disparate treatment and failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996).  In religious accommodation cases, courts employ a burden shifting scheme. *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). An employee may establish a *prima facie* failure-to-accommodate claim by demonstrating "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Id.* (citing *Chalmers*, 101 F.3d at 1019) (internal quotation marks omitted). If a *prima facie* case is made, the burden shifts to the employer to show "*either* (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances *or* (2) that such accommodation was not provided because it would have caused undue hardship[.]" *Id.* (emphasis in original). To demonstrate undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83 n.14 (1977)).

In its motion, Defendant does argue that Plaintiff has failed to allege the first and third elements of a *prima facie* case of failure to accommodate under Title VII. Indeed, the Amended

11

Complaint states that Defendant implemented a requirement that all employees receive a COVID-19 vaccine, states that Plaintiff declined to receive a vaccine on account of "her sincerely held religious beliefs regarding her Catholic faith," and explains specifically how Plaintiff's religious beliefs conflicted with vaccination.[5] Am. Compl. ¶¶ 8, 9. The Amended Complaint further states that Plaintiff was fired for violating Defendant's COVID-19 vaccination policy by refusing the vaccine, satisfying the third element of a *prima facie* case. Am. Compl. ¶ 12.

However, Defendant argues that Plaintiff cannot satisfy the second element and that she failed to provide sufficient information that her religious beliefs conflicted with Defendant's COVID-19 vaccination policy. Defendant seeks either dismissal or summary judgment on this basis. In addition, Defendant seeks summary judgment on the grounds that accommodating Plaintiff's religious beliefs would impose undue hardship on Defendant. The Court will address each of these two arguments in turn.[6]

    A. <u>Whether Defendant Had Notice of a Conflict Between Plaintiff's Religious Beliefs and an Employment Requirement</u>

To establish failure to accommodate religious beliefs under Title VII, the plaintiff must establish that "she informed her employer that her religious needs conflicted with an employment requirement and asked the employer to accommodate her religious needs." *Chalmers*, 101 F.3d at 1019. "[O]nly when sufficiently notified would any employer have an opportunity to take reasonable steps to accommodate an employee's conflict." *Cary v. Carmichael*, 908 F. Supp. 1334,

---

[5] According to the Amended Complaint, it was Plaintiff's understanding that testing, development, and production of the vaccine involved use of cells derived from elective abortions and that a Catholic organization made a statement "refer[ing] to these cell lines as morally compromised for their connection with abortions." Am. Compl. ¶ 9.

[6] Defendant also argues that Plaintiff fails to state a *prima facie* case of religious discrimination under a disparate treatment theory. In her opposition, Plaintiff makes clear that she is asserting a claim for failure to accommodate and is not alleging disparate treatment. Pl. Opp'n at 2.

1343 (E.D. Va. 1995) *aff'd sub nom. Cary v. Anheuser-Busch, Inc.*, 116 F.3d 472 (4th Cir. 1997). However, the employee "must provide enough information to allow [her] employer to realize the potential impact [her] religion will have upon [her] job[,]" *Cary*, 116 F.3d 472, and to "allow the company any sort of opportunity to attempt reasonable accommodation" of the employee's religious beliefs. *Chalmers*, 101 F.3d at 1019. The U.S. Court of Appeals for the Fourth Circuit and other courts have recognized "the importance of 'bilateral cooperation' between an employer and employee in their search for a reasonable accommodation." *Firestone Fibers & Textiles Co.*, 515 F.3d at 316 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)); *see also Cary*, 116 F.3d 472; *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (holding that the "statutory and regulatory framework" requiring reasonable accommodations for employee's religious practices obligates employer and employee to engage in an "interactive process" in seeking reasonable accommodations).

      Defendant argues that Plaintiff failed to provide sufficient information that her religious beliefs conflicted with its COVID-19 vaccination policy because "she refused to provide any information to support or substantiate her alleged religious objection." Def. Mem. at 7. Plaintiff's Accommodation Form reflects her request for "Religious Exemption" from the vaccination policy and indicates that Plaintiff was unable to "provide documentation" to support her religious beliefs and need for accommodation, explaining that her beliefs were "deeply personal." Def. Exh. 3. Defendant argues that Plaintiff's description of her religious beliefs as "deeply personal" and failure "to identify or clarify the religious basis for her objection" amounted to a "refus[al] to provide any further information regarding her sincerely held religious belief." Def. Mem. at 7–8. According to Defendant, it was not until Plaintiff filed her Amended Complaint that she "even identif[ies] her religion as Catholic" and explain her reasons for refusing the COVID-19 vaccine.

13

*Id.* at 9. Defendant maintains that the Accommodation Form Plaintiff submitted was not sufficient to inform Defendant that a total exemption from the vaccination requirement was necessary to accommodate her religious beliefs. *Id.* at 9.

As an initial matter, the Amended Complaint contains enough facts to state plausibly that she advised Defendant of her religious beliefs and requested accommodation based on a conflict between those beliefs and an employment requirement. Specifically, Plaintiff alleges that, "[i]n or around October 2021," Defendant notified its employees that they would be required to be "fully vaccinated" for COVID-19. Am. Compl. ¶ 8. The Amended Complaint further states that, in December 2021, Defendant provided Plaintiff and other employees the Accommodation Form specifically calling for information regarding whether any employee seeking an exemption from the COVID-19 vaccination mandate requested the exemption as an accommodation of the employee's religious beliefs.[7] Am. Compl. ¶¶ 8, 9; Def. Exh. 3. On December 2, 2021, Plaintiff completed and submitted an Accommodation Form specifically requesting an exemption on religious grounds—*i.e.*, as an accommodation of Plaintiff's religious beliefs. Am. Compl. ¶ 9; Def. Exh. 3.

Defendant argues that the information Plaintiff provided on the Accommodation Form was inadequate "to support or substantiate her alleged religious objection[]" to the COVID-19 vaccine. Def. Mem. at 7. The Court notes that the Accommodation Form itself specifically asks the employee requesting a religious exemption to the vaccination requirement whether the employee

---

[7] Defendant has presented a copy of its written COVID-19 vaccination policy. The policy generally required all employees to be fully vaccinated for COVID-19 but acknowledged that employees "may be entitled" to accommodations for medical reasons or due to conflicts with "a sincerely held religious belief, practice or observance." Def. Exh. 2. The policy states that "HR [would] respond to all requests for reasonable accommodations and schedule a meeting with the coworker within two business days[,]" and that "[a]ll such requests [would] be handled in accordance with applicable laws and regulations." Def. Exh. 2.

"can . . . provide documentation to support [her] belief(s) and need for an accommodation[]" and, if not, to provide an explanation. Def. Exh. 3. Plaintiff answered this question in the negative—that she could not provide "documentation" to support her religious beliefs and need for accommodation—and explained that her "religious beliefs are deeply personal." *Id.*

Defendant's argument that a more detailed explanation was needed or expected from Plaintiff is unpersuasive in the circumstances of this case, for several reasons. First, the Accommodation Form only calls for "documentation" and, if "documentation" cannot be provided, an explanation why it cannot be provided. Def. Exh. 3. The form does not call for undocumented forms of information to identify the employee's religious affiliation or to explain why the employee's religious beliefs conflict with the vaccination requirement.

Second, the Accommodation Form provides just three lines of space for an employee to write an explanation why she cannot provide the requested "documentation." *Id.* There is no indication in the form to suggest that Defendant expected a detailed explanation of the employee's religious beliefs, need for accommodation, or lack of supporting documents.

Third, Plaintiff alleges in the Amended Complaint that Defendant's HR representative was aware that Plaintiff was Catholic and had a meeting with Plaintiff in which she discussed Plaintiff's request for religious exemption but did not ask Plaintiff for a greater explanation of her religious beliefs or need for an accommodation. Am. Compl. ¶ 10. Plaintiff confirms in her affidavit that she met with Ms. Duvall, Defendant's Senior Vice President of HR, shortly after submitting her Accommodation Form to discuss the request for accommodation. Pl. Aff. According to Plaintiff, "Ms. Duvall stated that she was already aware of [Plaintiff's] strong faith," and Ms. Duvall did not request "any information about [Plaintiff's] religious affiliation or additional information to

15

support [her] request [for accommodation].”[8] *Id.* Viewing the facts in the light most favorable to Plaintiff, the Court is not persuaded by Defendant's argument that more information about Plaintiff's religious beliefs was necessary to provide notice that Plaintiff required accommodation for her sincere religious beliefs.

Defendant cites *Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM, 2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022), in support of its argument that Plaintiff failed to notify Defendant of her conflicting religious beliefs. *Marte* is distinguishable from the instant case, and Defendant's reliance upon it is misplaced. In *Marte*, the defendant-employer Montefiore Medical Center ("MMC") issued a COVID-19 vaccination mandate to all its employees "who engaged in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 2022 WL 7059182 at *2. In her complaint, the plaintiff physician assistant alleged that "she was unwilling to receive the COVID-19 vaccines" but did not state she had a bona fide religious belief that conflicted with the mandate. *Id.* at *3. Moreover, the plaintiff never claimed she had informed MMC that her objection to the vaccine was based on religion, or even that MMC was aware she had a religious objection. *Id.* at *4. Instead, the plaintiff "plead[ed] only that she told her employer she did not want the vaccine and asked for 'a reasonable accommodation as defined by law.'" *Id.* The court found that the plaintiff failed to state a claim for religious discrimination under Title VII. *Id.*

Unlike in *Marte*, Plaintiff here expressly indicated on the Accommodation Form that she sought a religious exemption from Defendant's COVID-19 vaccination mandate based upon her religious beliefs. She first checked the box indicating a request for a "Religious Exemption" and

---

[8] Plaintiff further attests that Ms. Duvall advised Plaintiff "that a religious and medical exemption was no longer an option for any TCC employees[,]" and that Defendant's "Board [and] CEO decided that they wanted all employees to be vaccinated with no exemptions. . . ." *Id.*

then stated, "[m]y religious beliefs are deeply personal[,]" to explain why she could not provide supporting documentation. Def. Exh. 3. Additionally, Plaintiff alleges that Defendant's HR executive, Ms. Duvall, was aware of Plaintiff's religious convictions and, when given the opportunity, did not request greater detail about Plaintiff's specific beliefs or need for accommodation. Am. Compl. ¶ 10.

For the reasons explained above, Plaintiff pleaded adequate facts to support her claim that she informed Defendant "that her religious needs conflicted with" Defendant's COVID-19 vaccination requirement and asked Defendant "to accommodate her religious needs." *Chalmers*, 101 F.3d at 1019. Moreover, based on the limited evidentiary record described above, the Court cannot find that there is no dispute of genuine fact as to whether Plaintiff informed Defendant that her sincere religious beliefs conflicted with Defendant's COVID-19 vaccination policy. Defendant has failed to satisfy its burden, and therefore, summary judgment is not appropriate. Accordingly, Defendant's motion on this issue will be denied without prejudice to either party's filing a dispositive motion at a later point in the litigation, following greater development of the evidence through discovery.

B. Whether Accommodation Would Impose an Undue Hardship on Defendant

Defendant separately seeks summary judgment on the grounds that accommodating Plaintiff by granting an exemption from its COVID-19 vaccination requirement would impose an undue hardship on Defendant. The issue presented for decision is whether there is no genuine dispute of material fact that an undue hardship would result from accommodating Plaintiff's religious beliefs.

Once an employee establishes a *prima facie* case of failure to accommodate, "the burden then shifts to the employer to show that it could not accommodate the plaintiff's religious needs

without undue hardship." *Chalmers*, 101 F.3d at 1019. Citing the Supreme Court decision in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), Defendant states that "undue hardship" for purposes of Title VII is that which "impos[es] 'more than a *de minimis* cost' on the operation of the employer's business." Def. Mem. at 10. However, after Defendant's motion was briefed in this matter, the Supreme Court held in *Groff v. Dejoy*, "that showing 'more than a *de minimis* cost,' as that phrase is common parlance, does not suffice to establish 'undue hardship' under Title VII. *Hardison* cannot be reduced to that one phrase." 600 U.S. at 468. The Court further stated its understanding of *Hardison* "to mean that 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business . . . such as 'substantial additional costs' or 'substantial expenditures.'" *Id.* at 468–69.

Defendant argues that exempting Plaintiff from the vaccine mandate would impose an undue hardship because Plaintiff's job "required her to meet with clients, many of whom were medically vulnerable recipients of Medicare or Medicaid funding, and to attend visits to healthcare facilities[.]" Def. Mem. at 10. Defendant cites Plaintiff's written job description, indicating that one of Plaintiff's essential responsibilities was to "assess[] [clients'] home care needs by reviewing medical documentation and/or accompanying the Support Planners to site visits or discharge planning meetings as required." Def. Exh. 1. To exempt Plaintiff from the COVID-19 vaccination requirement, Defendant argues, "could threaten the health of those clients, and could also prevent her from performing her job duties as she would be unable to visit clients at facilities requiring vaccination." Def. Mem. at 10–11. Additionally, Defendant argues that Plaintiff's requested exemption "would infringe on and burden other employees by creating a greater risk of COVID-[19] infection and requiring them to carry the burden of job duties [Plaintiff] would be unable to fulfill." *Id.* at 11.

Plaintiff's affidavit, attached to her opposition, calls into question whether exempting her from vaccination would present the risks described by Defendant. Plaintiff attests that, for several years before her termination, she had no "client related visits" and her position with TCC "was a virtual position." Pl. Aff. She further explains that, by working remotely, she "could be available to as many Support Planners and Management Staff as required." *Id.* The affidavit of a former colleague, Ms. Hoch, corroborates Plaintiff's statements about working remotely. Hoch Aff. Ms. Hoch attests that she worked at TCC for over five years as "an office employee" and that Plaintiff "was never in the office" and "always worked virtually." *Id.* According to Ms. Hoch, "the majority of positions [at TCC], including [Plaintiff's] were 100% virtual." *Id.*

The limited evidentiary record leaves unclear whether Plaintiff's job responsibilities would actually require her to meet with clients and coworkers and whether her requested exemption would result in "substantial increased costs" in Defendant's business operations. *Groff*, 600 U.S. at 470. Indeed, Defendant has presented no evidence of any costs or expenditures that would result from any modification of Plaintiff's work responsibilities necessary to exempt her from vaccination while avoiding any health risks to others. Therefore, Defendant has failed to demonstrate the absence of a genuine dispute of material fact as to whether Plaintiff's requested accommodation would impose an undue hardship due to the requirements of Plaintiff's position.[9]

---

[9] Defendant also contends that granting Plaintiff an exemption from the COVID-19 vaccination requirement would cause it to violate CMS regulations and potentially jeopardize its "funding and ability to provide services to Medicare and Medicaid clients." Def. Mem. at 11. Defendant argues that "an employer cannot be required to make an accommodation that violates the law or requires the employer to depart from applicable federal regulations." *Id.* Plaintiff disputes that Defendant would violate CMS regulations by providing religious accommodations required by Title VII. She cites the CMS Interim Final Rule regarding COVID-19 vaccination of health care staff, which states that "some individuals . . . might be eligible for exemptions from the COVID-19 vaccination requirements . . . under existing Federal law . . . such as Title VII of the Civil Rights Act of 1964." Omnibus COVID-19 Health Care Staff Vaccination, 6 Fed. Reg. 61,572 (Nov. 5, 2021).

Accordingly, the Court finds that summary judgment on the issue of undue hardship would be premature, at best. Accordingly, the motion for summary judgment will be denied without prejudice to either party filing or renewing a dispositive motion after greater development of the evidence through discovery.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss or, in the alternative, motion for summary judgment (ECF 12) will be DENIED without prejudice to any later dispositive motion.

A separate Order follows.

September 28, 2023                              /S/
Date                                      Matthew J. Maddox
                                          United States Magistrate Judge